IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| AMERICAN TRANSMISSION COMPANY LLC | ) ) ) |
| Plaintiff, | ) ) |
| v. | CASE NO. ) ) |
| VAN ENKEVORT TUG AND BARGE, INC. and MOM ERIE TRADER, LLC, in personam, | ) JURY DEMAND ) ) ) |
| and | ) ) |
| M/V CLYDE S. VAN ENKEVORT and ERIE TRADER, in rem, | ) ) ) |
| Defendants. | ) |

## VERIFIED COMPLAINT

American Transmission Company LLC ("ATC"), for its Complaint against Van Enkevort Tug and Barge, Inc. ("VTB"), MOM Erie Trader, LLC ("MET"), the M/V Clyde S. Van Enkevort, and the Erie Trader, alleges as follows:

## NATURE OF THE CASE

1. On April 1, 2018, the 12,000 pound anchor of a tug, the M/V Clyde S. Van Enkevort, and a barge, the Erie Trader, owned and operated by VTB and MET ("Defendants' Vessel"), severed two, and damaged a third, of ATC's six 138,000 volt submarine electric power cables (the "Cables"), laying along the bottomland of the Straits of Mackinac (the "Straits"), in a well-known no anchor zone. In addition to destroying the three Cables, the anchor strike caused the release of approximately 600 gallons of dielectric fluid from the damaged Cables into the Straits (the "Fluid Leak"). The United States Coast Guard established a Unified Command, which includes and has been largely funded by ATC, to remediate environmental threats, and

any environmental damage, caused by the Fluid Leak (the "USCG Unified Command").  ATC seeks to recover it full damages incurred in connection with the Cables and the Fluid Leak.

## PARTIES

2. Plaintiff ATC is a limited liability company, organized under the laws of the State of Wisconsin, with its principal place of business in Waukesha, Wisconsin.

3. Defendant VTB is a corporation, organized under the laws of the State of Michigan, with its principal place of business located in Escanaba, Michigan.

4. Defendant MET is a limited liability company, organized under the laws of the State of Delaware, with its principal place of business in Norwalk, Connecticut.

5. The M/V Clyde S. Van Enkevort is a tug boat owned and/or operated by VTB and/or MET, flagged under the laws of the United States, and bearing O.N. number 1232691.

6. The Erie Trader is an 875 foot barge, owned and/or operated by VTB and/or MET, flagged under the laws of the United States, and bearing O.N. number 1238380.

7. The M/V Clyde S. Van Enkenvort tug is mated to the Erie Trader barge.  The two vessels operate together, and were operated together, as a single vessel, at all times relevant to this Complaint.  A photograph of the tug and barge, mated together, is shown below:



## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this case, pursuant to 28 U.S.C. § 1333, 46 U.S.C. § 30101, and 33 U.S.C. § 2717(b), because this is an admiralty and maritime claim, within the meaning of Federal Rule of Civil Procedure 9(h), and a claim under the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701 et seq. ("OPA").  As described above, and more fully set forth below, the acts and omissions giving rise to ATC's claims occurred on navigable waters of the United States, were caused by a commercial vessel hauling iron ore on navigable waters, had actual and potential disruptive impacts on maritime commerce, were substantially related to traditional maritime activity, and are subject to OPA.

9. This Court has personal jurisdiction over VTB because VTB is a Michigan Corporation, with its principal place of business in this judicial district, and a substantial portion of VTB's acts and/or omissions giving rise to ATC's claims occurred in this judicial district.

10. This Court has personal jurisdiction over MET because a substantial portion of MET's acts and/or omissions giving rise to ATC's claims occurred in this judicial district.

11. This Court has in rem jurisdiction over Defendants' Vessel because the M/V Clyde S. Van Enkevort and the Erie Trader are and/or will be in this judicial district during the pendency of this action.

12. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391, because VTB resides in this judicial district and a substantial portion of the acts or omissions giving rise to ATC's claims occurred in this judicial district.

## ATC'S TRANSMISSION CABLES

13. ATC is a transmission-only electric utility that owns and operates more than 9,600 miles of transmission lines, and more than 550 substations, in portions of Michigan, Wisconsin, Minnesota, and Illinois.

14. ATC has owned and operated the Cables since 2001.

15. The six Cables, located along the bottomlands of the Straits, are approximately four miles long, and form two 138,000 volt circuits (the "Circuits"). They connect the McGulpin Riser Station, in Mackinaw City, and the Point Le Barbe Substation, in St. Ignace, and are used to provide electricity to the Upper Peninsula of Michigan.

16. The Cables are 3 ¼ inches in diameter and contain dielectric fluid, which acts as an insulator to copper conductors. The dielectric fluid is housed in a duct, measuring approximately 3/4 of one inch, at the center of each of the Cables. The figure below generally represents a cross section of the Cables:



17. Not far from the Cables, there is a submarine oil pipeline, also traversing the bottomlands of the Straits.

18. The area in which the Cables and the oil pipeline are located is well-known to VTB and/or MET, and Defendants' Vessel, as a no anchor zone (the "No Anchor Zone").

4

19. The Cables and oil pipeline are marked on official navigational charts published by the United States National Oceanographic and Atmospheric Administration.

20. On-shore signage also alerts vessels that the area is a No Anchor Zone.

21. On April 1, 2018, each of the two Circuits tripped offline, at approximately 4:31:52 p.m. and 4:32:20 p.m., central time, respectively (the "Circuit Faults").

## DEFENDANTS' VESSEL DAMAGES ATC'S CABLES

22. Commercial vessels, like Defendants' Vessel, have automatic identification systems that continuously track and report the vessel's location as it traverses the Great Lakes ("AIS").

23. Defendants' Vessel had a functioning AIS, and its AIS was transmitting the location of the Defendants' Vessel, at all times relevant to this Complaint.

24. According to April 1, 2018 AIS tracking information, Defendants' Vessel, crossed above the Cables, in the No Anchor Zone, at or about the time of the Circuit Faults ("Cable Crossing").

25. The Circuit Faults occurred during the Cable Crossing.

26. Defendants' Vessel was equipped with port and starboard anchors. The anchor chain for the starboard anchor was long enough, if deployed, for the starboard anchor of the Defendants' Vessel to reach, and to drag along, the bottomlands of the Straits during the Cable Crossing and strike the Cables.

27. A likeness of the starboard anchor of Defendants' Vessel, and a portion of the anchor chain, is shown in the following photograph (the "Starboard Anchor").

Case 2:18-cv-00104-GJQ-TPG   ECF No. 1 filed 07/02/18   PageID.6   Page 6 of 14



28.     The anchor shown in the photograph is actually a new starboard anchor that Defendants attached to the anchor chain of Defendants' Vessel because of damage to the original anchor discovered after the Circuit Faults.

29.     At the time of the Cable Crossing, the chain of the Starboard Anchor was deployed to an extent sufficient for the Starboard Anchor to drag along the bottomlands of the Straits and strike the Cables.

30.     The Starboard Anchor should not have been deployed during the Cable Crossing.

31.     No vessel, other than Defendants' Vessel, crossed over the Cables, with its anchor deployed to a depth sufficient to strike the Cables, at or about the time of the Circuit Faults.

32.     During the Cable Crossing, the Starboard Anchor struck the Cables (the "Anchor Strike").

6

33. The Anchor Strike severed two of the Cables, damaged a third Cable, triggered the Circuit Faults, and proximately caused the Fluid Leak.

34. Photographs of the two severed Cables are shown below:





35.     After discovering the Fluid Leak, ATC notified the National Emergency Response Hotline ("NERH") that the Cables were damaged, and of the Fluid Leak, which led to the establishment of the USCG Unified Command to respond to the Fluid Leak.

36.     On or about April 9, 2018, the USCG notified ATC that ATC is a "potentially responsible party" under the Clean Water Act, 33 U.S.C. § 1321, that it may be liable for damages in connection with Fluid Leak, and that ATC was required to "carry out immediate effective removal and/or remediation actions."

37.     In cooperation with the USCG Unified Command, ATC carried out effective removal and/or remediation actions, including the investigation, assessment, and abatement (by removing fluid from and capping the Cables) of the Fluid Leak.

38. Defendants are liable to ATC for all of the damages incurred by ATC in connection with the matters described in this Complaint, in an amount to be proved at trial, including (a) expenses incurred by ATC for environmental response activities, in connection with the USCG Unified Command, and otherwise, to remediate environmental threats, and any environmental damage, caused by Defendants' negligent acts and omissions; (b) costs to repair, replace, restore, and/or reconfigure, the Cables, the Circuits, and other transmission equipment affected by Defendants' negligent acts and omissions; and (c) all other compensation to which ATC is entitled under law (collectively, "ATC's Damages").

## COUNT I – NEGLIGENCE
*(In Personam against VTB and MET)*

39. Paragraphs 1 through 38 above are incorporated into this Count I as if fully set forth herein.

40. At all times relevant to this Complaint, VTB and/or MET had a duty to maintain and operate Defendants' Vessel using reasonable care, in accordance with the norms of prudent seamanship, statutory and regulatory rules, and other rules, norms, customs and usages.

41. VTB and/or MET breached their duty by, among other things, at all times relevant to this Complaint:

  (a) failing to maintain appropriate policies and/or procedures for operation of Defendants' Vessel;

  (b) failing to hire and properly supervise qualified crew persons to operate Defendants' Vessel;

  (c) failing to properly equip and maintain Defendants' Vessel;

  (d) failing to properly inspect, maintain, repair, and/or operate, the Starboard Anchor, windlass, anchor brake, computer system, and/or other appurtenances of Defendants' Vessel, to ensure that Defendants' Vessel was in a safe and fit condition; and,

    (e)    failing to properly inspect, maintain, repair, and/or operate, the Starboard Anchor, windlass, anchor brake, computer system, and/or other appurtenances of Defendants' Vessel, while Defendants' Vessel was underway, and during the Cable Crossing, to ensure that the Starboard Anchor did not damage the Cables.

42. In breaching their duties, VTB and/or MET proximately caused ATC's Damages.

**WHEREFORE**, ATC prays for a judgment against VTB and MET, jointly and severally, in an amount equal to ATC's Damages, plus pre-judgment and post-judgment interest, attorneys' fees, costs and expenses, and for such other and further relief as the Court deems just and proper.

### COUNT II – NEGLIGENCE

*(In Rem against M/V Clyde S. Van Enkevort and the Erie Trader)*

43. Paragraphs 1 through 42 above are incorporated into this Count II as if fully set forth herein.

44. The M/V Clyde S. Van Enkevort and the Erie Trader had a duty to operate Defendants' Vessel using reasonable care, in accordance with the norms of prudent seamanship, statutory and regulatory rules, and other rules, norms, customs and usages.

45. The M/V Clyde S. Van Enkevort and the Erie Trader breached their duties, as described in Paragraph 41, including each of the subparagraphs (a) through (e), of this Complaint, and in doing so proximately caused ATC's Damages.

46. In breaching their duties, the M/V Clyde S. Van Enkevort, and the Erie Trader, committed a maritime tort and, therefore, ATC has a maritime lien against each of the M/V Clyde S. Van Enkevort and the Erie Trader.

47. The M/V Clyde S. Van Enkevort and the Erie Trader are and/or will be in this judicial district during the pendency of this action.

**WHEREFORE**, ATC prays:

(a)  for a judgment against the M/V Clyde S. Van Enkevort, and the Erie Trader, jointly and severally, in an amount equal to ATC's Damages, plus pre-judgment and post-judgment interest, attorneys' fees, costs and expenses, and for such other and further relief as the Court deems just and proper;

(b) that process in due form of law, according to the rules and practice of this Court in cases of admiralty and maritime jurisdiction, be issued against the M/V Clyde S. Van Enkevort, and the Erie Trader, in rem, citing each of the M/V Clyde S. Van Enkevort, and the Erie Trader, to appear and answer this Complaint;

(c) that a warrant of arrest be issued against each of the M/V Clyde S. Van Enkevort, and the Erie Trader, pursuant to Supplemental Admiralty Rule C.

## COUNT III – DECLARATORY JUDGMENT
*(Liability under OPA)*

48.   Paragraphs 1 through 47 above are incorporated into this Count III as if fully set forth herein.

49.   As described in Paragraph 36 above, the USCG notified ATC that ATC is a "potentially responsible party" under the Clean Water Act, 33 U.S.C. § 1321.

50.   Pursuant to OPA, the USCG Unified Command directed ATC to respond to the Fluid Leak and, in doing so, ATC incurred and continues to incur significant expenses.

51.   Under OPA, if a responsible party "establishes that a discharge or threat of a discharge and the resulting removal costs and damages were caused solely by an act or omission of one or more third parties," then "the third party or parties shall be treated as the responsible party for purposes of determining liability under [OPA]."  33 U.S.C. § 2702(d)(1)(A).

52. Under OPA, "[a] person may bring a civil action for contribution against any other person who is liable or potentially liable under [OPA] or another law." 33 U.S.C. § 2709.

53. Under OPA, "removal costs" include "all removal costs incurred by the United States . . . [or] a State . . . under subsection (c), (d), (e), or (l) of [Clean Water Act] section 1321" and "any removal costs incurred by any person for acts taken by the person which are consistent with the National Contingency Plan."

54. VTB and/or MET's acts and omissions caused, and they are solely responsible for, the Fluid Leak.

55. ATC is entitled to a declaration that VTB and/or MET shall be treated as the responsible party, or parties, for purposes of determining liability under [OPA], pursuant to 28 U.S.C. § 2201 and 33 U.S.C. § 2709.

56. ATC is also entitled to a declaration that VTB and/or MET are liable to ATC for all damages incurred by ATC, including removal costs, that are properly recoverable under OPA in connection with the incident described in this Complaint, pursuant to 28 U.S.C. § 2201 and 33 U.S.C. § 2709.

**WHEREFORE**, ATC prays for:

(a) a declaratory judgment that VTB and/or MET shall be treated as the responsible party or parties for purposes of determining liability under OPA; and,

(b) a declaratory judgment that VTB and/or MET are liable to ATC for all damages incurred by ATC, including removal costs, that are properly recoverable under OPA in connection with the incident described in this Complaint, in an amount to be determined at trial; and,

(c) a judgment against VTB and / or MET, jointly and severally, in an amount equal to all damages incurred by ATC, including removal costs, that are properly recoverable under OPA in connection with the incident described in this Complaint, in an amount to be determined at trial, plus pre-judgment and post-judgment interest, attorneys' fees, costs and expenses, and for such other and further relief as the Court deems just and proper.

## JURY DEMAND

ATC hereby demands a trial by jury.

Dated: July 2, 2018

Respectfully submitted,

*/s/ Robert Wierenga*

Barry S. Hyman (pending *pro hac vice*)
bhyman@schiffhardin.com
Ann H. MacDonald (pending *pro hac vice*)
amacdonald@schiffhardin.com
SCHIFF HARDIN LLP
7100 Willis Tower
233 South Wacker Drive
Chicago, Illinois 60606

Robert Wierenga
rwierenga@schiffhardin.com
SCHIFF HARDIN LLP
350 South Main Drive
Ann Arbor, Michigan 48104

Counsel for American Transmission Company LLC

## VERIFICATION

I, Duane Schoon, hereby state, under oath, as follows:

1. I am over 18 years of age and competent to make this verification.

2. I have been employed by ATC for more than 10 years in various positions pertaining to management of ATC's transmission system, including from March 2016 to August 2017, when I was the Director of Asset Maintenance & Commissioning, and from August 2017 to the present, as the Director of Real Time Operations.

3. In my role as Director of Real Time Operations, I was involved in ATC's response to, and reviewed information gathered by ATC during its investigation into, the incident described in the Complaint ("ATC Information").

4. Based on the ATC Information, I hereby verify that the factual statements in the Complaint are true and correct to the best of my knowledge, information and belief.

American Transmission Company

By: _____
Duane Schoon, as ATC's
Director of Real Time Operations

SUBSCRIBED AND SWORN to
before me this 29th day of
_____June_____, 2018.

_____
Notary Public

[Notary Seal: LISA NESTER KASS, NOTARY PUBLIC, STATE OF WISCONSIN]

− 1 −